THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAVE OUR SALTSBURG SCHOOLS, | : | Case No. 2:21-CV-601 |
| Plaintiff, | : | |
| v. | : | Hon. William S. Stickman, IV |
| BLAIRSVILLE-SALTSBURG SCHOOL, DISTRICT, | : | |
| Defendant. | : | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(1)&(6)

Defendant, Blairsville-Saltsburg School District (hereinafter "BSSD") submits this brief in support of its motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. BSSD previously filed a Brief in Opposition to Emergency Motion in which it offered multiple arguments challenging the legal sufficiency of Plaintiff's claims in this action. The arguments set forth in that brief are hereby incorporated as if they were set forth at length herein.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) permits a defendant to assert defenses for (1) "lack of subject-matter jurisdiction" and (6) "failure to state a claim upon which relief can be granted" via a motion to dismiss. In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law. Gould Elecs. Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000). "In deciding

a Rule 12(b)(1) motion to dismiss, the court must first determine whether the motion presents a 'facial attack' or a 'factual attack' on the claim in issue because that distinction determines how the pleading must be reviewed. A facial attack is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject-matter jurisdiction of the court because some jurisdictional defect, e.g., failure to present a justiciable controversy, is present." Team Angry Filmworks, Inc. v. Geer, 171 F. Supp. 3d 437, 440 (W.D. Pa. 2016). In reviewing a facial attack a court must apply the same standard used to review a motion to dismiss under Rule 12(b)(6). Id.

## **FACTUAL AND PROCEDURAL HISTORY**

This case is a challenge to actions taken by the BSSD on April 22, 2021[1] when its board of school directors voted to consolidate Blairsville Middle-High School (BMHS) and Saltsburg Middle-High School (SMHS) and to close SMHS (Plaintiff's Complaint at ¶ 25). On May 6, 2021 Plaintiff filed a Complaint seeking to permanently enjoin BSSD from closing SMHS and asserting claims of procedural due process violations (Counts I & III); equal protection - class of one violations (Count II); and breach of fiduciary duty (Count IV) against the BSSD. Plaintiff also filed an Emergency Motion for a Preliminary Injunction contemporaneously with its complaint. Pursuant to Plaintiff's motion, the court scheduled a hearing for May 25, 2021.

On May 12, 2021 the court issued a further Order scheduling a status conference on May 17, 2021 and directing Plaintiff as follows:

> Further, it is the burden of the plaintiff in federal litigation to demonstrate federal jurisdiction. By Noon on May 17, 2021, Plaintiff shall file an offer or proof setting forth the specific facts as to the following:

---

[1] Defendant misstated the date of the challenged board action as May 22, 2021 on page 5 of its Brief in Opposition to Emergency Motion.

1)   the nature of and constitutional standing of Plaintiff

**2)   specific facts and authority showing that a cognizable federal claim or other bases of federal jurisdiction exists with respect to each and every cause of action asserted in the complaint and forming the basis of the instant injunction proceeding** (emphasis added)

On May 17, 2021 Plaintiff filed its Offer of Proof as required by the Court's order. Despite being provided an additional opportunity by the court to substantiate the claims alleged in its Complaint, Plaintiff failed to provide any additional "specific facts and authority showing that a cognizable federal claim or other bases of federal jurisdiction exists with respect to each and every cause of action asserted in the complaint and forming the basis of the instant injunction proceeding."

Following the status conference, the court issued an Order rescheduling the hearing for June 18, 2021 at 9:00 a.m. and providing BSSD the opportunity to file a Motion to Dismiss pursuant to Red. R. Civ. P. 12 by May 19, 2021. This brief and accompanying motion are being submitted in response to that Order.

## ARGUMENT

## I.   PLAINTIFF'S DUE PROCESS CLAIMS, BOTH FEDERAL AND STATE, HAVE BEEN REJECTED BY THE COURTS OF THIS CIRCUIT.

In Counts I and III of its complaint, Plaintiff brings two due process claims, one under 42 U.S.C. § 1983 and a second under Article 3 § 14 of the Pennsylvania Constitution. See Plaintiff's Complaint Counts I, III. Both counts claim procedural due process violations in the BSSD's closing of Saltsburg Middle-High School (hereinafter "SMHS"). These claims should be dismissed, however, in consideration of precedent in

3

this circuit directly on point in Mullen v. Thompson, 155 F.Supp.2d 448 (W.D.Pa. 2001)

(hereinafter Mullen I) affirmed Mullen v. Thompson, 31 Fed. Appx. 77 (3d Cir. 2002)

(hereinafter Mullen II), that squarely refutes the notion that Plaintiff's members have a

constitutional right to be educated at a school of their own choosing.

In Mullen I, the Plaintiffs challenged the right of the Pittsburgh Public Schools to

close certain schools. Mullen I, at 450. Like the present case, Plaintiffs claimed (1)

procedural violations of the Pennsylvania School Code (24 P.S. § 7-780) gave rise to a

federal due process right; and (2) that Article 3 § 14 of the Pennsylvania Constitution gave

rise to a due process right to be educated in the school of their choice. Addressing first

the Section 1983 claim the Western District Court held:

> The Supreme Court has made clear, however, that a state law that
> establishes purely procedural rules for the granting or denial of a benefit
> does not, standing alone, also create a constitutionally recognized liberty or
> property interest in that benefit. Olim v. Wakinekona, 461 U.S. 238, 103
> S.Ct. 1741, 75 L.Ed.2d 813 (1983). Restated, a state law that establishes
> purely procedural rules does not create federal due process rights. Rather,
> only those state laws that place a substantive limitation on official discretion
> in the decision to grant or deny the benefit itself - not in the process leading
> to that decision - create a property interest that is entitled to constitutional
> protections under the Due Process clause. Id. at 249-50, 103 S.Ct. 1741.
> The Court of Appeals for the Third Circuit follows the teachings of Olim. See
> Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992); Stephany v. Wagner,
> 835 F.2d 497, 500 (3d Cir. 1987).
>
> Section 7-780 of the Pennsylvania School Code clearly provides only
> procedural rules to govern school officials in the closing of a school. It does
> not place any substantive limitation on the school officials' discretion on
> whether to close a school. Indeed, elsewhere in theCode, the Pennsylvania
> Legislature expressly granted school officials unfettered discretion to close
> schools, and they may do so for any lawful reason. See 24 Pa. Const. Stat.
> § 13-1311.
>
> In summary, Section 7-780 of the Pennsylvania School Code establishes
> only a procedure to guide school officials in the manner that schools are to
> be closed. Therefore, it does not create for the students affected by the
> closure any constitutionally recognized property interest in an education at
> that school. Accordingly while the Board's alleged failure to comply with

section 7-780 may be wrongful under state law, it does not violate plaintiff's federal due process rights.

<u>Id.</u> at 452.

With respect to the claim under the Pennsylvania Constitution, this Court further held:

> Nor am I persuaded by plaintiffs' alternate argument that because the Pennsylvania Constitution grants them the right to a free public education, they have a state created property interest to be educated at the school of their choice. Pennsylvania indeed has created a right to a free public education under its Constitution. *See* Pa. Const. Art. 3, § 14 ("The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."). Thus, plaintiffs cannot be denied a free public education without being afforded due process protection. Defendants, however, have not denied plaintiffs an education. The students are simply being reassigned to other schools within the school district.

> It is important to recognize that the issue in this case is not whether students have a state-created right to a free public education. They clearly do. The properly framed issue is whether plaintiffs have a state-created right to receive that education at the school of their choice. The Pennsylvania Constitution, Pennsylvania statutory law, and Pennsylvania common law recognize no such right.

<u>Id.</u> at 452-53.

The analysis of <u>Mullen I</u> was affirmed by the Third Circuit Court of Appeals in

<u>Mullen II</u> wherein the court held:

> Plaintiffs also argue that the premature school closing decision violated their 14th Amendment due process rights. We are not convinced. The District Court correctly analyzed the substance of this issue and properly concluded that Plaintiffs have no constitutionally cognizable property or liberty interest in attending the individual school of their choice. *See Mullen v. Thompson*, 155 F.Supp.2d 448, 451-53 (W.D.Pa. 2001). While Pennsylvania law clearly guarantees an adequate free public education generally, the contours of that right are not nearly as specific as Plaintiffs here contend. If the Defendants had denied Plaintiffs access to any free public education, that would be a different matter. However, without a constitutionally recognized property or liberty interest, there is no need for further inquiry on the due process question. *See*, e.g., *Paul v. Davis*, 424 U.S. 693, 711-12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Plaintiff's claims in this matter are indistinguishable from those that were before this court in Mullen I: Plaintiff herein challenges BSSD's authority to close SMHS. As was the case in Mullen I, however, Plaintiff has no constitutionally recognized interest in the continued operation of SMHS. Accordingly, dismissal of the due process claims set forth under Counts I and III of Plaintiff's Complaint is appropriate in consideration of this court's holding in Mullen I.

## II.   PLAINTIFF'S DUE PROCESS CLAIMS ARE VAGUE, CONFUSING AND HAVE NO BASIS IN LAW.

If the court's analysis proceeds beyond Mullen, Plaintiff's due process claims must be dismissed nevertheless because Plaintiff has failed to plead any factual support for its claims beyond baldly asserted legal conclusions.

In paragraph 16 of its Complaint, Plaintiff contends that "Defendant's board made the decision to consolidate BMHS and SMHS and to permanently close SMHS prior to the public hearing and before Defendant's board gathered any public input or necessary information and/or data regarding the effects of consolidation." This contention belies facts pled in Plaintiff's own Complaint, however. In particular, Plaintiff has pled that (1) BSSD scheduled a public hearing "pursuant to 24 Pa. C.S. § 7-780,[2] to discuss possible

---

[2] Plaintiff clearly misunderstands the nature of a hearing under Section 7-780. Section 780 hearings do not have outcomes. The Section 780 hearing is not an adjudicatory proceeding. There is no judge or jury and no adjudication takes place. "Section 780 clearly requires that school boards obtain community input at a duly advertised public meeting at least three months before voting to permanently close a school or substantially all of its facilities." Save Our Schools v. Colonial School District, 156 Pa. Cmwlth. 671, 628 A.2d 1210, 1213 (1993).

24 P.S. § 7-780 provides:

> In the event of a permanent closing of a public school or substantially all of a school's facilities, the board of school directors shall hold a public hearing on the question not less than three (3) months prior to the decision of the board relating to the closing of the school. Notice of the

6

closures and/or consolidations within its district, specifically, to consolidate BMHS and SMHS and to permanently close SMHS" (¶ 10); (2) prior to the Section 780 hearing, "Defendant's board made several presentations on various topics involving the potential consolidation of SMHS and BMHS including, but not limited to, finances and class sizes" (¶ 13); (3) held a "780 public hearing to discuss possible consolidations and/or closures on or about January 11, 2021, and January 12, 2021"[3], the purpose of which "was for [BSSD] to gather public input and to consider the public's concerns prior to voting on the matter" (¶¶ 20-21); (4) during the Section 780 hearing, the public was able to voice any concerns they had to BSSD's Board regarding the closure of SMHS (¶ 23); and (5) Plaintiff was able to provide its own expert report for consideration by BSSD's Board prior to voting on the matter. It is plainly evident from Plaintiff's own pleading that the public was afforded ample opportunities to provide input and express concerns regarding the closure of SMHS.

Despite the transparency, Plaintiff alleges that there was a predetermined outcome of the Section 780 Hearing (¶¶ 26-27). Plaintiff's suggestion that the decision was "predetermined" is simply a baldly pled and unfounded assumption. Plaintiff pled no dates, facts, or other identifiable information as to where and when this "predetermination" was reached. Rather, plaintiff would have this court extrapolate predetermination from (1) an isolated statement of a board member quoted without any context (¶ 18); (2) unsubstantiated community scuttlebutt that amounts to "hearsay within hearsay" (¶ 19);

---

hearing shall be given in a newspaper of general circulation in the school district at least fifteen (15) days prior to the date of such hearings.

[3] Plaintiff's complaint misstates the date of the Section 780 hearing, which occurred on January 13 and January 14, 2021.

and the fact that, at the Section 780 proceedings, Superintendent Martell presented a plan for potential reconfiguration along with a proposal for use of the SMHS building should reconfiguration be approved (¶ 22). However, there are several unwarranted assumptions implicit in Plaintiff's flawed reasoning. For instance, Plaintiff fails to articulate how the comments of an individual can be imputed to the entire board. Plaintiff's reasoning that Mr. Martell's proposal to utilize SMHS as a STEAM Academy presupposes predetermination is similarly erroneous. Clearly this argument strains credulity and should not be given any weight by the court.

The BSSD unequivocally denies Plaintiff's unfounded contention that the school board determined to close SMHS prior to the final vote. Having noted this, Section 780 does not require school board members to approach the hearing without an opinion or point of view on closure. Indeed, the school board must vote to schedule and advertise the Section 780 hearing weeks in advance.[4] Voting to schedule and advertise the Section 780 hearing obviously requires that board members have some thoughts on the matter.[5]

---

[4] On that point, one Pennsylvania court has ruled that a board member who had served for only ten days was qualified to vote on a building plan which would ultimately result in the closing of a school. See Ulanoski v. Sheaffer, 53 Pa. Cmwlth.. 279, 417 A.2d 846 (1980). Responding to the claim that the member acted capriciously because she had no time to study the facts the court stated:

> To contend that she failed to give the hotly disputed issue proper thought and consideration is to ignore her running as a one-school proponent in the May 1977 primary election. Her public involvement in a resolution of the issue belies the contention that she did not familiarize herself with the facts concerning the issue prior to casting her vote.

Id. at 282-83, 417A.2d at 847-848.

[5] At some point a board member must be allowed an opinion. "This process leading up to the actual exercise cannot be unending. To demand an unending process is in itself an arbitrary and capricious and wholly unreasonable expectation. There must be a time when a board is entitled to arrive at a decision and thereafter enter into an executory stage . . .

8

Accordingly, even when the averments pled in Plaintiff's complaint are assumed as true, they are nevertheless legally insufficient to warrant the relief requested. Accordingly, BSSD respectfully requests that Plaintiff's claims stated under Counts I, II, and III of Plaintiff's Complaint be dismissed.

## III.   PLAINTIFF'S EQUAL PROTECTION CLAIMS ARE VAGUE, CONFUSING, AND WITHOUT SUFFICIENT BASIS IN LAW

In Count II of its Complaint, Plaintiff asserts a "class of one" equal protection claim against the BSSD arising under 42 U.S.C. § 1983. However, Plaintiff has failed to identify the contours of the right alleged to have been violated. Count II should be dismissed for the reasons discussed, *infra*.

As a threshold matter, under 42 U.S.C. § 1983 "the plaintiff must demonstrate the violation of a right protected by the Constitution or laws of the United States, committed by a person acting under color of state law . . . . Therefore, in evaluating a § 1983 claim, a Court must first identify the exact contours of the underlying right said to have been violated and determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Keslosky v. Borough of Old Forge, 66 F. Supp. 3d 592, 613–14 (M.D. Pa. 2014) (internal citations and quotations omitted). As discussed *supra*, this court has determined, and the Third Circuit has affirmed, that there is no constitutionally protected right to attend the school of your choosing. Mullen v. Thompson, 155 F. Supp. 2d 448, 453 (W.D. Pa. 2001), aff'd, 31 Fed. Appx. 77 (3d Cir. 2002)(unpublished). Accordingly, this court's pronouncement in Mullen would seemingly bring this inquiry to a conclusive end as Plaintiff has no cognizable right to the continued operation of the SMHS.

---

." Uniontown Area School District v. Allen, 4 Pa. Cmwlth.. 183, 188-89, 285 A.2d 543, 546 (1971).

9

If the court should continue its inquiry beyond <u>Mullen</u>, Plaintiff's claims must fail nevertheless as Plaintiff has failed to articulate with particularity any differential treatment between Blairsville students and Saltsburg students. Moreover, this claim cannot succeed as a rational basis exists for the challenged consolidation and the obvious legitimate concerns of the School District.

To succeed under an Equal Protection claim under a "class of one" theory, plaintiff must demonstrate "that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006). Moreover, "threadbare and conclusory 'recital of the elements' of a class-of-one equal protection violation is insufficient to show a plausible claim to relief." <u>Jeffers v. City of Washington</u>, CIV.A. 14-1361, 2015 WL4232662, at *3 (W.D. Pa. July 13, 2015) (unpublished opinion).

Instantly, Plaintiff's equal protection claim only sets forth baldly pled conclusory statements without defining the contours of the right alleged to have been violated or demonstrating how Saltsburg students will be treated differently that Blairsville students. In fact, quite the opposite would seem to be the case. **By the consolidation of schools as pled by Plaintiff, Blairsville and Saltsburg students will (1) go to the same schools; (2) at the same facilities; (3) where they will attend the same classes; (4) that will be taught by the same teachers; (5) using the same curriculum. All students will similarly have (5) the same opportunity to participate in the same extracurricular activities and events.**[6]

---

[6] One could conceivably hypothesize that Blairsville students and Saltsburg students may have different bus ride times resulting from consolidation. However, Plaintiff has

The foregoing notwithstanding, even if Plaintiff was able to identify a cognizable disparity in treatment between Blairsville and Saltsburg students, its claims must nevertheless fail in the face of obvious legitimate reasons for the School District's actions. "If there was a rational basis for the action of the decisionmaker, there is no equal protection class of one violation, regardless of whether the decision was motivated by animus." Montanye v. Wissahickon Sch. Dist., 399 F. Supp. 2d 615, 620 (E.D. Pa. 2005), aff'd, 218 Fed. Appx. 126 (3d Cir. 2007)(unpublished).

A rational basis standard of review that will be applied to this inquiry since the United States Supreme Court has held that there is no fundamental right to an education arising under the U.S. Constitution. Plyler v. Doe, 457 U.S. 202, 221 (1982); see also Shaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist., 687 F.2d 718, 721 (3d. Cir. 1982); Mullen, 155 F. Supp. 2d at 453 (students do not have a right to be educated in a school of their choice); Balsbaugh v. Rowland, 447 Pa. 423, 435 (1972) (rejecting that individuals have a right to a "neighborhood school").

This Circuit's standard for rational basis review has been well established:[7]

failed to adduce any quantitative data demonstrating what (if any) differential bus ride times would result from the consolidation plan. Even if the court assumes a difference in bus ride times *arguendo*, a precedent requiring school districts to ensure that all students have equal commute times and distances would lead to untenable consequences and force many schools to construct expensive, centrally located facilities.

[7] This standard has been even further refined for analyzing challenged actions taken by school Districts. "Judges are not well suited to act as school administrators" and our courts have "repeatedly stressed the importance of acknowledging that local school boards better understand their own communities and have a better knowledge of what in practice will best meet the educational needs of their pupils." Doe ex rel. Doe v. Lower Merion Sch. Dist., 665 F.3d 524, 556–57 (3d Cir. 2011). "Accepting the principle that a substantive state policy decision made by a school board following regular procedures becomes a federal issue under the due process clause because the board's decision may have been ill-advised would have the undesirable effect of constitutionalizing every decision made by

Rational basis review is a very deferential standard. It is met if there is any reasonably conceivable state of facts that could provide a rational basis for the differing treatment . . . . We have held that the principles of equal protection are satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . . The Supreme Court has emphasized that "rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.

Newark Cab Assn. v. City of Newark, 901 F.3d 146, 156 (3d Cir. 2018) (internal citations and quotations omitted).

"Furthermore, an action that affects neither a fundamental right nor a suspect classification is accorded a strong presumption of validity." Montanye v. Wissahickon Sch. Dist., 399 F. Supp. 2d 615, 622 (E.D. Pa. 2005), aff'd, 218 Fed. Appx. 126 (3d Cir. 2007) (unpublished) (internal citations and quotations omitted). "To overcome that presumption, a challenger must negate 'every conceivable basis which might support' the classification." St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist., 919 F.3d 1003, 1010 (7th Cir. 2019). Furthermore, the United States District Court for the Middle District of Pennsylvania rejected a "class of one" equal protection claim very similar to the one now before this court in Archer v. York City Sch. Dist., 227 F.Supp.3d 361 (M.D. Pa. 2016) (finding that declining enrollment was a rational basis for the school district's decision not to renew the charter for a charter school).

Plaintiff's Complaints incorporates the report of Adam Aberson (see ¶ 24). In his report, Mr. Aberson identifies multiple benefits to the closure of SMHS, including "more student accessibility to clubs; increased focus on science; some of the proposed course

state and local governmental entities." Shaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist., 687 F.2d 718, 721 (3d Cir. 1982).

offerings would likely be of interest to students; increased career and technical education (CTE) offerings to students; some of the proposed STEAM Academy offerings appear to align with the proposed Project Lead the Way program; and potentially improved use of supplies." (See Plaintiff's Complaint, Exhibit "A" at p. 3). Mr. Aberson also acknowledges that closure of SMHS could save BSSD funds and potentially make the district eligible for additional federal funding. (Plaintiff's Exhibit "A" at p. 4). Much like the case before the Middle District in Archer, any of these reasons provide a sufficient rational basis for the BSSD's decision to close SMHS.[8]

BSSD respectfully requests that the court dismiss Count II of Plaintiff's Complaint as legally insufficient in accordance with Mullen I, which applies with equal force to equal protection claims. Furthermore, Count II should be dismissed as legally insufficient as Plaintiff has failed to establish that its equal protection rights were violated or that BSSD lacked a rational basis for its actions.

## IV.   PLAINTIFF'S "BREACH OF FIDUCIARY DUTY" CLAIM IS WITHOUT MERIT

In Count IV of its complaint Plaintiff asserts a claim arising under Pennsylvania state law styled as "Breach of Fiduciary Duty". As a preliminary comment, Count IV suffers from the same vagueness and lack of clarity that pervades Counts I - III. Nevertheless, in consideration of the deficiencies of Plaintiff's claims discussed at length above, there would be little reason for this court to retain jurisdiction of the lone remaining state claim as it "is a question more properly addressed by the state courts." See Mullen I, 155 F.Supp.2d at 455.

---

[8] These reasons are being stated for purposes of the instant motion and BSSD reserves the right to raise additional arguments in support of the closure of SMHS, not the least of which being a precipitous decline in enrollment.

Even if this court does retain jurisdiction of Count IV, the claims asserted therein have no likelihood of success. No matter how Count IV is styled, when reduced to its essentials it is nothing more than a challenge to the closure of SMHS.

Pennsylvania applies a highly deferential standard to challenges to school closures:

> Before a court will restrain a school board from performing discretionary acts, a challenger to a school board's exercise of discretion must sustain an heavy burden of proving bad faith, arbitrariness or abuse of discretion on the part of the board. [Evidence] that some other action by the board might have been better, that other plans were not considered, . . . or that taxes will rise, does not meet the burden. It is not properly borne out by the act of proving that the plan is lacking in wisdom, or business sense, or common sense, or any combination of the three. . . . [A]rbitrariness and caprice are not to be confused with bona fide differences of opinion and judgment. . . .The law will regard a school board's act as an abuse of power only when there is no room for difference of opinion and when the facts admit no other conclusion than that the board has been influenced by considerations other than public interest.

Mid Valley Taxpayers Ass'n v. Mid Valley Sch. Dist., 416 A.2d 590, 593-94. (Pa. Cmwlth. 1990); see also Zebra v. School District of City of Pittsburgh, 449 Pa.432, 296 A.2d 748 (1972). Plaintiff's Complaint does not aver any facts, which if proven, would satisfy this highly deferential standard. Consequently, Count IV of Plaintiff's Complaint fails to state a cognizable claim.

## CONCLUSION

For these reasons, the allegations of the Complaint, even if true, are insufficient to establish a federal cause of action and, therefore, subject matter jurisdiction is lacking. Consequently, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure. In the alternative, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims for which relief may be granted.


Respectfully submitted,


*/s/Ned J. Nakles, Jr.*          */s/Ryan P. Cribbs*          */s/Matthew M. Hoffman*
Ned J. Nakles, Jr., Esq.     Ryan P. Cribbs, Esq.      Matthew M. Hoffman, Esq.
Nakles and Nakles           Nakles and Nakles         Tucker Arensburg
1714 Lincoln Avenue        1714 Lincoln Avenue       1500 One PPG Place
Latrobe, PA 15650          Latrobe, PA 15650          Pittsburgh, PA 15222
(724) 539-1291              (724) 539-1291             (412) 594-3910
PA I.D. No. 36886          PA I.D. No. 316226        PA I.D. No. 43939