IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAVE OUR SALTSBURG SCHOOLS,<br><br>　　　　　　　　*Plaintiff*,<br><br>　v.<br><br>BLAIRSVILLE-SALTSBURG SCHOOL DISTRICT,<br><br>　　　　　　　　*Defendant*. | Civil Action No. 2:21-cv-601<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Save Our Saltsburg Schools ("SOSS") is "a community group representing students and parents of students enrolled in Saltsburg schools."[1] (ECF No. 1, ¶ 5). It also purports to represent "community members and/or residents, as well as owners of businesses located in Saltsburg, Pennsylvania." (*Id.*). On May 6, 2021, SOSS filed a Complaint asserting four causes of action: Count I, 42 U.S.C. § 1983—Procedural Due Process; Count II, 42 U.S.C. § 1983—Equal Protection; Count III, Violation of Pa. Const. Art. 3, § 14; and Count IV, Breach of Fiduciary Duty. SOSS's claims arise out of the decision of Defendant Blairsville-Saltsburg School District ("School District") to merge its two middle schools: Blairsville Middle High

---

[1] Plaintiff appears to be an unincorporated association. Unincorporated associations have capacity to assert claims under the Constitution and laws of the United States pursuant to Federal Rule of Civil Procedure 17(b)(3)(a). "[A]n association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy . . . . Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). SOSS may, therefore, pursue the interests of its members, which includes parents and students attending SMHS.

1

School ("BMHS") and Saltsburg Middle High School ("SMHS"), and close SMHS. A day after filing its Complaint, SOSS filed an Emergency Motion for Preliminary Injunction asking the Court to restrain the School District from merging the two middle schools and closing SMHS. (ECF No. 2). The School District filed a Response in Opposition to the Motion for Preliminary Injunction (ECF No. 11) and a Motion to Dismiss the Complaint (ECF No. 17). SOSS filed a Response to the Motion to Dismiss which purported to "withdraw" Counts I and III (the due process claims under the Federal and State constitutions, respectively).[2] (ECF No. 19, p. 2 n.2). It argued, however, that it has pled cognizable claims for a violation of the Equal Protection Clause and the School District's alleged breach of fiduciary duty.

The Court will dismiss those counts abandoned by SOSS (Counts I and III). Further, and as explained herein, the Court holds that SOSS failed to plead a cognizable claim of a violation of Equal Protection. As such, Count II must be dismissed. With the failure of the federal claims, and thus the basis for federal jurisdiction, the Court will dismiss the remaining state law fiduciary duty claim.

---

[2] A plaintiff wishing to withdraw particular claims without prejudice must amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). *Ctr. for Orthopedics & Sports Med. v. Horizon*, No. 13-1963, 2015 WL 5770385, at *2 (D.N.J. Sept. 30, 2015); *see also Waris v. Mackey*, No. 09-1103, 2009 WL 4884204, at *4 (E.D. Pa. Dec. 15, 2009) ("The proper procedure for dismissing less than all of the claims in an action is a motion to amend under . . . Rule 15(a)."); *Chan v. Cnty. of Lancaster*, No. 10-CV-03424, 2013 WL 2412168, at *16 (E.D. Pa. June 4, 2013) (same). Under Rule 15(a)(1), a party may amend its pleading once as a matter of course within twenty-one days of serving it or, if the pleading requires a response, twenty-one days after service of the responsive pleading or twenty-one days after service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1)(A)–(B). All other amendments must be done with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Courts are instructed to freely give leave to amend when justice so requires. *Id*. Given the time constraints under which this case is proceeding, the Court will permit SOSS's withdrawal of claims in its Brief in Opposition. (ECF No. 19, p. 2 n.2).

## I. BACKGROUND

The School District has, for the purposes of this case, two middle high schools, Saltsburg Middle High School ("SMHS") and Blairsville Middle High School ("BMHS"). SOSS alleges that on February 24, 2020, the School District scheduled a public hearing to discuss the consolidation of the two schools into BMHS, which would result in the closure of SMHS. Ultimately, the School District, through a vote of its elected school board, decided to do so. SOSS asks the Court to enjoin the merger.

SOSS alleges several purported irregularities in the School District's decision-making process. First, SOSS claims that the School District never considered any alternative plan whereby BMHS would be closed, even though SMHS was more recently built. SOSS claims that the School District lacked any "rational basis" for its failure to do so. SOSS also disputes the accuracy of the representations made by the School District about issues surrounding the merger, including, among other things, finances and class size. SOSS also alleges that the School District failed to present more detailed information about the proposed consolidation, even though it was asked to do so by parents, teachers and other members of the community.

SOSS claims that a public hearing to discuss the proposed merger was held on January 11 and 12, 2021. There, students, alumni, parents, teachers, business owners and community members voiced opposition to the consolidation. SOSS argued, among other things, that the merger would burden SMHS students due to the increased distance and busing times required to get them to the BMHS facility. SOSS alleges that it presented an expert report highlighting problems associated with the merger. It attached the report to the Complaint and quotes from it therein. Ultimately, the efforts of SOSS and others to stop the merger failed and, on April 22, 2021, the School District's board voted to consolidate the two schools and to close SMHS.

SOSS contends that the School District made light of its concerns throughout the process and pre-judged the situation—even making up its mind—before the public hearing and without giving due heed to concerns raised by the public. It argues that the School District's decision was made without rational basis, in a bad-faith manner and in violation of the alleged fiduciary duty owed to SOSS. It also contends that the decision will negatively impact students who attend SMHS and impact their access to education and ability to learn.

## II.   STANDARD OF REVIEW

The School District asserts both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) as the basis of its Motion to Dismiss. Essentially, it argues that SOSS has failed to assert cognizable constitutional claims as a matter of law and, therefore, there is no basis for the exercise of federal jurisdiction. Thus, their motion is most appropriately analyzed under Rule 12(b)(6).

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pled factual allegations as true and view them in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is

present when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pled facts give rise to a plausible inference, that inference alone will not entitle the plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id*.

"[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Although the Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

### III.  ANALYSIS

There is no question that decisions impacting the education of children hit close to the proverbial home and elicit strong emotions from many different constituencies. There is, likewise, no question that decisions regarding public education are largely left to the broad discretion of local school officials and are predominantly guided by state law. Only in rare circumstances will federal questions, much less constitutional considerations, be involved. Here, SOSS attempts to inject claims under the United States Constitution into what is, quintessentially, a matter of state law and local discretion. Their assertion of violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is without merit and cannot stand.

### A. SOSS failed to plead a plausible equal protection claim.

SOSS's Complaint pleads a claim for violation of equal protection—class of one—through 42 U.S.C. § 1983. Count II pleads that "the consolidation and permanent closure of SMHS has deprived Plaintiff, through its members who are Saltsburg students, of an equal and adequate public education." (ECF No. 1, ¶ 41). "Furthermore, Blairsville students will not be subjected to the same conditions, as described hereinbefore above, which will ultimately impact Saltsburg students' access to education and ability to learn." (*Id*. ¶ 42). These allegations are unquestionably bare-boned. Looking back into the factual allegations of the Complaint one may see additional allegations that, possibly, support SOSS's equal protection claims. SOSS claims that "Saltsburg students would be subjected to long bus rides which would endanger their safety, decrease their accessibility to extracurricular activities, and limit their ability to obtain a quality education once they finally arrived at the Blairsville campus." (*Id*. ¶ 23). However, while SOSS's own expert report (presented to the School District's board and quoted in the Complaint) expresses concerns about bussing time and academic performance, it also states that "consolidation would reduce Saltsburg *and Blairsville* students' overall participation in extracurricular activities, especially athletics." (*Id*. ¶ 24) (emphasis added). Giving the Complaint every inference and benefit of the doubt, SOSS's equal protection claim can broadly be summed up as contending that "the consolidation and permanent closure of SMHS has deprived Plaintiff, through its members who are Saltsburg students, of an equal and adequate public education." (*Id*. ¶ 28).

The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause does not preclude the government from distinguishing between persons and classes of persons, but rather precludes a state from "treating differently persons

who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). A "class of one" equal protection claim occurs "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for the treatment." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d. Cir. 2008). A plaintiff is not required to identify "actual instances where others have been treated differently for purposes of equal protection[,]" but "an allegation of an equal protection violation still must contain a claim that a plaintiff has been treated differently from others who are similarly situated." *Id*. at 244.[3] In sum, in order to sustain a "class of one" equal protection claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d. Cir. 2006).

---

[3] *Phillips* was decided prior to the Supreme Court's decision in *Iqbal*. Subsequent district court cases from within the Circuit have speculated that, to the extent that *Phillips* did not require the identification of specific instances of disparate treatment, it has likely been superseded by the tighter pleading standards required by *Iqbal*. *See Myers v. Shaffer*, No. 02:11-CV-01107, 2012 WL 3614514, at *12 n.7 (W.D. Pa. Aug. 21, 2012); *Archer v. York City Sch. Dist.*, No. 1:13-CV-2826, 2014 WL 12884086, at *9 (M.D. Pa. Feb. 27, 2014) ("We agree that developments in federal pleading requirement under *Iqbal* render *Phillips'* general-allegations standard problematic and conclude that '[m]ere allegations of mistreatment without identification of similarly situated individuals who were treated differently will not support an equal protection claim.'"). Indeed, in *Phillips* the Circuit relied on the Second Circuit's decision in *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d. Cir. 2003), in formulating the looser pleading standard. Following *Iqbal*, the Second Circuit recognized that *DeMuria* was superseded and held that a general allegation of differential treatment was not sufficient to maintain a class of one equal protection claim. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d. Cir. 2010). The Court agrees with the cases' holdings that *Phillips* has been superseded by *Iqbal*. However, it is not outcome determinative here because, as explained above, SOSS has failed to even remotely plead disparate treatment from others similarly situated, and the Court cannot discern any lack of rational basis for the merger at issue.

Regarding the first element—disparate treatment from others similarly situated—it is well established:

> While persons are similarly situated under the Equal Protection Clause when they are alike in all relevant respects, the law in the Third Circuit does not require the plaintiff to show that the comparators are identical in all relevant respects but only that they are alike. Determining whether an individual is similarly situated to another is a case-by-case, fact-intensive inquiry.

*Borrell v. Bloomburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013) (cleaned up).

As to the rational basis prong, it is important to note that a plausible claim that there was no rational basis for the alleged difference in treatment is a constitutive element of a "class of one" claim. "A plaintiff must show that the differential treatment was irrational and wholly arbitrary. These challenges fail when there is any reasonably conceivable state of fact that could provide a rational basis for the classification." *Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin*, 85 F. Supp. 3d 803, 811 (M.D. Pa. 2015) (internal citations omitted). Government actions are granted great deference under the rational basis test, and a plaintiff must allege sufficient facts to overcome the presumption of rationality. *Archer v. York City Sch. Dist.*, No. 1:13-CV-2826, 2014 WL 12884086, at *10 (M.D. Pa. February 27, 2014). This can create some tension with the liberal pleading standards that give the non-moving party the benefit of any inference at the motion to dismiss stage.

> The Third Circuit has indicated that, to reconcile the tension between the liberal pleading standard and deference to the government under rational-basis review, "we accept as true all of the complaint's allegations, including all reasonable inferences that follow, and assess whether they are sufficient to overcome the presumption of rationality that applies to [government classifications]."

*Id.* (quoting *Rucci v. Cranberry Twp.,* 130 F. App'x 572, 575 (3d Cir. 2005)).

SOSS failed to plead a plausible equal protection "class of one" claim. It neither asserts that SMHS students are being treated differently than any similarly situated class—including

BMHS students, nor has it pled enough to overcome the presumption of rationality afforded to the School District.

There is nothing in the Complaint that plausibly asserts that SMHS students are being treated differently than students of BMHS or anyone else. Rather, they will attend the same school as those students currently attending BMHS. There is no allegation that the students of the two existing schools will be treated any differently in the merged school, that they will have different academic or athletic opportunities, different teachers or different facilities within the existing physical plant. Nevertheless, the Complaint makes the conclusory allegation that "the consolidation and permanent closure of SMHS has deprived Plaintiff, through its members who are Saltsburg students, of an equal and adequate public education" and that "Blairsville students will not be subjected to the same conditions as described hereinbefore above . . . ." (ECF No. 1, ¶¶ 28–29). There is scant support for this contention in the allegations of the Complaint.

The only contention that would remotely support an equal protection claim is that SOSS purports that, due to the merger, SMHS students will be forced to commute further to the combined school at the existing BMHS facility than students who currently attend BMHS. SOSS alleges that this could hinder academic and athletic participation. This argument is also unavailing. In any school district, there will be students who live nearer or farther from the school facilities. This does not inure to a constitutional violation for those students who have a longer and less convenient commute. Further, when there is a merger of schools where one is closed and one remains open, some students lose their existing school, will be uprooted and will have to travel farther than others to attend the new school. This does not vest an equal protection claim in those whose school closes. In every school district, some students live closer and some

9

farther from the school. This is simply not the type of distinction that implicates the Equal Protection Clause. The distinction that SOSS appears to plead is not a distinction of constitutional relevance. It cannot support a "class of one" equal protection claim.[4]

Nor has SOSS pled enough to get over the presumption of rationality. Indeed, SOSS has not plausibly pled that the alleged differential treatment was "irrational and wholly arbitrary." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004). Undoubtedly, SOSS asserts several areas of disagreement about the School District's decision, but none rise above disagreements on matters of prudential judgment and even remotely approach the level of "irrational and wholly arbitrary." This is highlighted by SOSS's own filings.

The expert report that SOSS attached to its Complaint and that it alleges was presented to the School District's board surely supports its position that the merger and closure of SMHS was a bad idea, perhaps even wrongheaded, but it does not show that there was no conceivable rational basis for doing so or that the decision to close SMHS can only be attributed to irrational and wholly arbitrary acts. The report, for example, concedes some potential benefits to the School District as a result of the closure of SMHS:

---

[4] While SOSS's Brief in Opposition to the Motion to Dismiss abandons its Procedural Due Process claim, it interjects into its Equal Protection argument allegations relating to the School District's deliberative process, or alleged lack thereof. For example, as an alleged differential treatment, SOSS argues:

> The Defendant also argues that the Plaintiff has failed to articulate any differential treatment between the Blairsville and Saltsburg students. In support of this argument, the Defendant makes no reference to or explains the impact of Paragraph 11 of the Complaint, which alleges a failure of the Board to consider any proposed consolidation plan other than the closure of the Saltsburg schools with a removal of those students to the Blairsville campus.

(ECF No. 19, p. 7). Even if true, this process-based argument does not establish the differential treatment needed to assert an equal protection claim.

> There are some benefits of the educational elements associated with the proposed closing of SMHS such as: possibly more student accessibility to clubs; increased focus on science; some of the proposed course offerings would likely be of interest to students; increased career and technical education (CTE) offering to students; some of the proposed STEAM Academy offerings appear to align with the proposed Project Lead the Way program and potentially improved use of supplies.

(ECF No. 1-1, p. 3). To be fair, it concludes that "the identifiable weaknesses of the academic program are much more significant than its strengths" and proceeds to highlight several such weaknesses. (*Id.*). But this shows a different position on a matter of prudential judgment. It does not show—as SOSS must—that the School District's decision was irrational and wholly arbitrary.

Count II of SOSS's Complaint sets forth a formulaic and conclusory assertion of an equal protection "class of one" violation. Even giving it every inference and benefit of the doubt, SOSS failed to plead a plausible equal protection claim. State law vests school districts with broad authority over determinations relating to school closures and consolidations. Only in the rarest circumstances should courts, especially federal courts, interject themselves into decisions made by school directors and only where the constitutional or other federal issue is clear and unavoidable. This makes sense—not every exercise of local governmental discretion implicates federal issues. Most do not. School leaders are directly and democratically accountable to their constituents and have a much deeper understanding of district-wide issues than unelected federal judges. This is why the law affords their decisions a presumption of rationality. Nothing pled in this case disturbs that presumption.

For these reasons, Count II will be dismissed. The dismissal will be with prejudice because, in light of the totality of the facts pled and the prevailing law, the Court holds that amendment would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434

(3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 Moore's Federal Practice – Civil § 15.15[4] (2019) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

### B. The Court will dismiss the state law claims without prejudice to refile in state court.

Counts IV of SOSS's Complaint asserts claims arising under state law. Because Count I has been abandoned and Count II is being dismissed with prejudice, there is no longer federal question jurisdiction over any claim in this case. With the failure of the only bases of federal jurisdiction, the Court will dismiss the state law claim without prejudice to SOSS's ability to refile in state court.

### IV.  CONCLUSION

For the reasons set forth above, Count I (which has been abandoned) and Count II will be dismissed with prejudice. Counts III and IV assert only state law claims and will be dismissed without prejudice to SOSS's ability to refile in state court. Because the Court is dismissing SOSS's Complaint it will, likewise, deny as moot its Emergency Motion for Preliminary Injunctive Relief.

BY THE COURT:

Date: June 1, 2021

/s/ *William S. Stickman IV*
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE